SCARINCI & HOLLENBECK, LLC
ATTORNEYS AT LAW
1100 VALLEY BROOK ROAD
P.O. BOX 790
LYNDHURST, NEW JERSEY 07071
Telephone: (201) 896-4100
Attorneys for Defendants
Our File No. 130.2890

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EILEEN GILGALLON, RONALD GILGALLON and SHAWN GILGALLON,<br><br>Plaintiffs,<br><br>v.<br><br>THE COUNTY OF HUDSON, ROBERT JANIZEWSKI, FRANCIS DELEONARDIS, MARK MORCHEL, MICHAEL CIFELLI, THE BOARD OF CHOSEN FREEHOLDERS, NEIL CARROL, VINCENT ASCOLESE, NAPTALIA CRUZ, WILLIAM BRAKER, NIDIA DAVILA-COLON, WILLIAM O'DEA, ALBERT CIFELLI, SILVERIO VEGA, MAURICE FITZGIBBONS, CONNELL, FOLEY, LLP, JOHN PL. LACEY, LABOR MANAGEMENT CONCEPTS, INC., JOHN MUNRO, STATE OF NEW JERSEY, JOSEPH TRAPP, and ABC CORPORATIONS 1-10 (a fictitious corporation) and JOHN and MARY DOES 1-10 (fictitious persons),<br><br>Defendants. | Hon. Dennis M. Cavanaugh<br><br>Civil Action No. 02-5948<br><br>**ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS** |

**THIS MATTER** having been opened to the Court by Scarinci & Hollenbeck, attorneys for Defendants, the County of Hudson, Michael A. Cifelli, Mark Morchel, Francis DeLeonardis and Robert

Janiszewski, on notice to Ronald Gilgallon, Eileen Gilgallon and Mary Hennig, pro se Plaintiffs ("Plaintiffs"), by regular and certified mail, return receipt requested, whereby the Defendants allege that the Plaintiffs' Third Amended Complaint filed in the Superior Court of New Jersey violates prior orders and judgments issued under Federal Civil Action No. 02-cv-0591 (WGB), 02-cv-0524 (KSH) and 02-cv-5948 (DMC), and whereas the Defendants seek a temporary and/or permanent injunction staying the plaintiffs' New Jersey Superior Court action under Docket No. HUD-L-4228-03, and the Court having considered the papers received, and the Court having found that the Defendants have a reasonable probability of ultimate success on the merits, the pendency of immediate and irreparable harm, that the balance of hardships favors the defendants, and that relief is necessary to preserve the status quo:

**IT IS** on this ________ day of ______________, 2005;

**ORDERED** that Plaintiffs show cause before Honorable Dennis M. Cavanaugh, U.S.D.J., U.S. District Court for the District of New Jersey, on the ______ day of _____________, 2005, at _____ o'clock in the forenoon, why an Order should not be entered in favor of the Defendant preliminarily enjoining Plaintiffs and the Superior Court of New Jersey until final disposition of this matter or further order of the Court, as follows:

1. Prohibiting Plaintiffs from proceeding in the Superior Court of New Jersey, Law Division, under Docket No. HUD-L-4228-03 with any claims against the Defendants Mark Morchel, Michael Cifelli, Francis DeLeonardis, the County of Hudson and/or Robert Janiszewski, individually or collectively; and

2. Staying the civil action in the matter of Gilgallon v. R.C. Shea and Associates, et al., Docket No. HUD-L-4228-03; and it is further

**ORDERED** that the Defendants request for a temporary restraining order is **GRANTED** hereby staying the New Jersey Superior court civil action in the matter of Gilgallon v. R.C. Shea and Associates, et al., Docket No. HUD-L-4228-03 pending the return date of this Order to Show Cause as listed herein; and it is further

**ORDERED** that Plaintiffs may move before this Court for the dissolution or modification of any restraints herein contained in this Order to Show Cause, upon two days notice to Defendant's attorney; and it is further

**ORDERED** that this Order to Show Cause shall constitute a summons to and process Plaintiffs, and that a copy of this Order to Show Cause and supporting Brief and Certification be served upon Plaintiffs within five days of the date hereof, said service to be made by certified mail/return receipt requested, and by regular mail, or by personal service, either of which

means of service shall be deemed sufficient service of process upon the Plaintiffs;

**ORDERED** that Plaintiffs shall file with the Court and serve upon Defendant's counsel any responding Brief and Affidavit(s) no later than 5:00 p.m. on _______________, 2005, and Defendant shall file and serve any reply papers no later than 5:00 p.m. on ___________, 2005; and it is further

**ORDERED** that a copy of this Order to Show Cause be served upon the Plaintiffs and the Clerk of the Superior Court, Hudson County Vicinage for compliance herewith, with a copy of same to be served upon Honorable Frances Antonin, J.S.C. within ____ day of receipt of same.

______________________________
Dennis M. Cavanaugh, U.S.D.J.

## CERTIFICATION OF SERVICE

I, Michael A. Cifelli, certify that on November 4, 2005, I served the following parties by personal service of the within Order to Show Cause, Certification of Michael A. Cifelli, Brief in support of Order to Show Cause and proposed Order upon:

Ronald Gilgallon
Eileen Gilgallon
Mary Hennig
206 Seventh Street
Harrison, NJ 07029
***Pro Se Plaintiffs***

Timothy Haggerty, Esq.
The Law Office of Stephen Gertler
Monmouth Shores Corporate Park
1350 Campus Parkway
P.O. Box 1442
Wall, NJ 07719
***Counsel for the defendants, Shea, Novy, Brustman and Shea & Novy***

I further certify that on November 4, 2005, I caused the within Order to Show Cause, Certification of Michael A. Cifelli, Brief in support of Order to Show Cause and proposed Order to be placed in overnight mail to:

Matthew Sapienza, DAG
State of New Jersey
Office of the Attorney General, Dept. of Law
25 Market Street
P.O. Box 112
Trenton, NJ 08623
***Counsel for the Superior Court of New Jersey***

MICHAEL A. CIFELLI

Dated: November 4, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EILEEN GILGALLON, RONALD GILGALLON and SHAWN GILGALLON,

Plaintiffs,

v.

THE COUNTY OF HUDSON, ROBERT JANIZEWSKI, FRANCIS DELEONARDIS, MARK MORCHEL, MICHAEL CIFELLI, THE BOARD OF CHOSEN FREEHOLDERS, NEIL CARROL, VINCENT ASCOLESE, NAPTALIA CRUZ, WILLIAM BRAKER, NIDIA DAVILA-COLON, WILLIAM O'DEA, ALBERT CIFELLI, SILVERIO VEGA, MAURICE FITZGIBBONS, CONNELL, FOLEY, LLP, JOHN PL. LACEY, LABOR MANAGEMENT CONCEPTS, INC., JOHN MUNRO, STATE OF NEW JERSEY, JOSEPH TRAPP, and ABC CORPORATIONS 1-10 (a fictitious corporation) and JOHN and MARY DOES 1-10 (fictitious persons),

Defendants.

Hon. Dennis M. Cavanaugh

Civil Action No. 02-5948

---

**BRIEF IN SUPPORT OF ORDER TO SHOW CAUSE**

---

SCARINCI & HOLLENBECK, LLC
ATTORNEYS AT LAW
1100 VALLEY BROOK AVENUE
P.O. BOX 790
LYNDHURST, NEW JERSEY 07071
Telephone: (201) 896-4100
Attorneys for Defendant, Hudson County
Our File No. 130.2890

On the Brief:
Michael A. Cifelli, Esq.
Alyse B. Heilpern, Esq.

{00228896.DOC}

# TABLE OF CONTENTS

STATEMENT OF FACTS & PROCEDURAL HISTORY

A. The First New Jersey Superior Court Case (1995-199) ....... 1

B. The U.S. District Court Cases (2000-2004)

1. The First Federal Complaint: *Gilgallons v. Hudson County Board of Freeholders, et al.*, Civil Action No. 00-CV-591 (WGB) ........ 7

2. The Second Federal Complaint: *Gilgallon v. Hudson County, Dermody, et al.*, Civil Action No. 02-CV-0524 (KSH) ........ 9

3. The Third Federal Court Complaint: *Gilgallon v. Hudson County, Michael Dermody, et al.*, Civil Action No. 02-cv-4319 (WGB) ........ 11

4. The Fourth Federal Court Complaint: *Gilgallon v. Hudson County, Michael Cifelli, et al.*, Civil Action No. 02-5948 (DMC) ........ 11

5. The Fifth Federal Court Complaint: *Gilgallon v. Dermody, et al.*, Civil Action No. 03-cv-3366 (WGB) ..... 13

C. The Second State Court Action (2003-Present) ........ 13

LEGAL ARGUMENT

POINT I. THE ENJOINING OF A STATE COURT ACTION IS APPROPRIATE WHERE THE STATE COURT ACTION SEEKS TO RE-LITIGATE AN ISSUE WHICH WAS NECESSARILY DECIDED IN A PRIOR FEDERAL ACTON

A. Federal Courts Have Authority to Enjoin Parties From Proceeding With State Court Actions Where the State Court Action Is Intended to Re-litigate an Issue Previously Determined by a Federal Court ........ 18

B. Where an Issue Is Necessarily Determined by a Federal Court, an Injunction Is Appropriate To Avoid Re-litigation ........ 25

CONCLUSION ........ 30

## TABLE OF AUTHORITIES

Cases

Amalgamated Clothing Workers of America v. Richman Bros. Co., 211 F.2d 449 (6th Cir. 1954), cert granted 75 S.Ct. 43, 348 U.S. 813, 99 L.Ed. 641, aff'd 75 S. Ct. 452, 348 U.S. 511, 99 L.Ed. 600 .................................. 19

Ballenger v. Mobil Oil Corp., 138 Fed. Appx. 615, 622 (5th Cir. 2005) ............................................ 24

Baltimore and O.R. Co. v. Kepner, 314 U.S. 44, 62 S.Ct. 6, 154 L.Ed. 28 (1941) ........................................ 19

Berman v. Denver Tramway, 197 F.2d 946, 949 (10th Cir. 1952) ... 19

Bd. of Commissioners v. Aspinwall, 24 How. 376, 16 L.Ed. 735 (1860) ................................................. 19

Bonser v. State of N.J., 605 F.Supp. 1227 (D.N.J. 1985) ... 22, 25

Bradford Electric Light Co. v. Clapper, 286 U.S. 145, 52 S.Ct. 571, 38 L. Ed. 981 (1984) ......................... 19

Browning Debenture Holders Committee v. DASA Corp., 454 F.Supp. 88 (S.D.N.Y. 1978), aff'd 605 F.2d 35 ........... 20

Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 108 S.Ct. 1684 (1988) ................................. 25, 27

Chrysler Corp. v. E.L. Jones Dodge, Inc., 421 F.Supp. 969 (W.D.Pa. 1976) ............................. 20

Commerce Oil Refining v. Miner, 303 F.2d 125, 127 (1st Cir. 1962) .................................... 18, 23

Hucmiev v. General Motors Corp., 999 F.2d 142 (6th Cir. 1993) .. 22

Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 985 F.2d 1067 (11th Cir. 1993) ................................ 19

Mitchum v. Foster, 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972) ..................................... 22

Moran v. Sturches, 145 U.S. 256, 14 S.Ct. 571, 38 L.Ed. 981 (1894) .................................... 19

Northwest Airlines, Inc. v. Astraea Aviation Services, Inc., 930 F.Supp. 1317 (D.Minn. 1996) ............................ 23

Philip v. Mackrey, 261 F.2d 945 (9th Cir. 1958) ................ 19

Scott v. Hunt Oil Co., 398 F.2d 810 (5th Cir. 1968) ............ 20

So. Central Bell Tel. Co. v. Constant Inc., 304 F.Supp. 732 (D.C. La. 1969), aff'd 437 F.2d 1207 ........................ 19

Southwest Airlines Co. v. Texas Intern. Airlines, Inc., 546 F.2d 84 (5th Cir. 1977) .................................. 23

Sperry Rand Corp. v. Rothlein, 288 F.2d 245 (2nd Cir. 1961) .... 20

U.S. v. Ford Motor Co., 522 F.2d 962 (6th Cir. 1975) ........... 18

U.S. Steel Corp. Plan for Employee Ins. Benefits v. Husisko, 885 F.2d 1170 (3rd Cir. 1989), cert den'd 110 S.Ct. 1121, 493 U.S. 1074, 107 L.Ed.2d 1028 ............................ 19

Vasquex v. Bridgestone/Firestone, Inc., 325 F.3d 665, 667 (5th Cir. 2003) ............................................... 24

Vendo Co. v. Lektro-Vend, Corp., 433 U.S. 623, 645 n. 1, 97 S.Ct. 2991, 2895 n. 1, 53 L.Ed.2d 1009 (1997) ............ 22

## STATEMENT OF FACTS & PROCEDURAL HISTORY

### A. The First New Jersey Superior Court Case (1995-1999).

The issues raised in the present suit arise from the bidding of public contracts in Hudson County for security guard services in 1995 and 1996. Specifically, on or about July 1994, the County of Hudson ("Hudson County") sent out a notice to bidders for a one year contract to provide security services at various Hudson County facilities for 1995 (hereinafter the "1995 contract"). Consec Security Services, Inc., ("Consec") forwarded a bid proposal to Hudson County, which was deemed to be the lowest bid submitted. However, Consec's bid was rejected by Hudson County's Purchasing Agent, Darren Maloney, on the basis of non-responsibility. Mr. Maloney found that Ronald Gilgallon, the former principal of Consec, was a convicted felon (*i.e.*, convicted a criminal attempted fraud) and he transferred his sole ownership of Consec to his spouse, Eileen Gigallon. Ms. Gilgallon later merged Consec into a new company, CFS Services, Inc. ("CFS"), which she also owned. Mr. Maloney found that rendering a public contract for security services to a company still closely related to a convicted felon warranted the rejection of the bid. Accordingly, Mr. Maloney awarded the 1995 contract to the second lowest bidder, Labor Management Concepts ("LMC"). (*See*, May 20, 1999 Appellate Division Decision attached as Exhibit A to Cifelli Cert.)

On or about June 14, 1995, CFS filed an Order to Show Cause with Temporary Restraints with the Superior Court of New Jersey, Hudson County, Docket No. HUD-L-4228-03, seeking, in part, relief to prevent the award of the 1995 Contract to any bidder other than CFS. (hereinafter, the "1995 Litigation").    The court entered the Order to Show Cause. (Exhibit A.) The Superior Court then lifted the restraints from the Order to Show Cause, permitting defendant Hudson County to award the 1995 to LMC. (*See*, Order dated 9/20/95, attached as Exhibit B to Cifelli Cert.).

CFS then filed an emergent application with the Appellate Division seeking to stay the trial court's Order lifting the restraint, which was granted. The Appellate Division found that Hudson County did not validly reject CFS based on the inadequate record of its findings of fact concerning Ronald Gilgallon's connection with Consec/CFS' business. The Appellate Division ordered the trial court to remand the matter to the Hudson County Purchasing Agent for another responsibility hearing and ordered that the Consec/CFS contract with Hudson County could not be modified. (Exhibit A)

However, no responsibility hearing occurred and Consec/CFS did not move before the court to have one held before Hudson County began its bidding in June 1996 for a new contract for the

security guard services (hereinafter the "1996 contract"). (Exhibit A) As such, both LMC and Consec/CFS continued to provide security services through the 1995 contract term.

After Hudson County solicited and received bids for the 1996 security guard services contract, CFS filed another Order to Show Cause, with Temporary Restraints, with the Superior Court of New Jersey. CFS sought to restrain Hudson County from bidding the 1996 contract until the responsibility hearing was held for the 1995 contract pursuant to the Appellate Division's prior Order. The application was denied by the court. (Exhibit A) CFS subsequently submitted its bid for the 1996 contract on or about July 1996, which was deemed by Hudson County to be the lowest financially. However, CFS was again rejected by Hudson County's purchasing agent as non-responsible. CFS was also rejected on the basis that CFS was non-responsive to Hudson County's numerous inquiries about the bid submission. (Exhibit A) CFS appealed Hudson County's decision to the Superior Court. The court ordered Hudson County to conduct a responsibility hearing to determine: (1) whether CFS' was eligible as a bidder for the 1996 Contract and, if the issue was not moot, the 1995 Contract; (2) whether CFS's bid was responsive; and (3) whether CFS was a responsible bidder. (Exhibit A)

Hudson County, in its discretion, designated Charles Daglian, Esq., as the hearing officer. Subsequently, a responsibility hearing was held over a ten (10) day period with

the County, Consec/CFS and LMC present. Mr. Daglian found that CFS was not a "responsible bidder" within the meaning of the Local Public Contracts Law because CFS had close and continuing ties with a convicted felon, Ronald Gilgallon. (Exhibit A)

CFS then appealed the Hearing Officer's decision vis-a-vis an Amended Complaint to include a challenge to the County's award of the 1994, 1995 and 1996 contracts to LMC. In addition to challenging the award of the security guard contracts, Plaintiffs included unfounded and unsubstantiated **allegations of fraud, corruption and collusion between the County of Hudson and LMC.** Specifically, it alleged a "secret agreement and collusion" between LMC and various Hudson County officials to prevent the award of the 1994, 1995 and 1996 contracts to CFS or other bidders.   CFS also alleged that LMC received special treatment from Hudson County officials by allowing LMC to use Hudson County facilities and/or equipment at no charge. CFS further alleged that the Hearing Officer was not independent and was prejudiced against CFS. (Exhibit A)

New Jersey Superior Court Judge Maurice Gallipoli held a hearing on the issue of Hudson County's decision to reject the CFS bids. Judge Gallipoli fully affirmed the Hearing Officer's findings of fact and determinations, effectively dismissing CFS' entire Complaint and permitting Hudson County to award the 1995 and 1996 Contracts to LMC.   Judge Gallipoli also denied the

plaintiffs' motion to file an amended complaint to recover alleged ultra vires payments made to LMC by Hudson County. (Exhibit A) Eventually, the cross-claim between Hudson County and LMC, for the recovery of monies for telephone calls was settled for $30,000. (Exhibit A)

On December 26, 1997, Hudson County and LMC settled the suit in the amount of $30,000 (hereinafter referred to as the "Settlement Agreement"). (*See*, settlement agreement and release attached as Exhibit B to Cifelli Cert.) The Settlement Agreement expressly provided that this resolved "all of the claims and counterclaims that Hudson County has filed, or could have filed, against Labor Management Services, Inc., based on conduct that occurred prior to the date of this Settlement Agreement." (Id.)

Also, on December 26, 1997, a Stipulation of Dismissal was filed and entered by the Clerk of the Court. (*See*, Stipulation of Dismissal and Certified Docket attached as Exhibit C to Cifelli Cert.) Pursuant to the authority given by the Board of Freeholders, the release and corresponding Stipulation of Dismissal were executed by the Hudson County Executive's designee; *i.e.*, the Deputy Hudson County Counsel.[1]

In May of 1999, the Appellate Division denied Plaintiffs' appeal to overturn the lower court's findings. In its opinion,

[1] Pursuant to Hudson County Administrative Code 4.3(b)(3), the County Counsel or Deputy County Counsel represents the County in "all matters of lititation."

the Appellate Court stated that, "we concur with the conclusion of Judge Gallipoli that Plaintiffs did not show that the County acted illegally or beyond its authority in agreeing to settle matters with LMC and that there was not substantial reason presented to undermine the presumption of validity of the settlement." (Exhibit A) The Appellate Division further held that all of the other issues raised were "clearly without merit." (Exhibit A) It is important to note that throughout their appeal, the Gilgallons continually alleged fraud and corruption between LMC and County officials, including questioning the validity of the $30,000 settlement. Indeed, the very stipulation of dismissal that is now at the center of this matter was an exhibit to their appeal in the 1995 litigation. (Exhibit C) As such, the substance of the alleged fraud and corruption allegations were disposed by the Appellate Division. For years, a staple of the Gilgallons' appeal was that the Stipulation of Dismissal was never filed with the court. However, a copy of the court's certified docket clearly demonstrates that the stipulation was actually filed with the court. (*See*, Superior Court's Certified Docket attached as Exhibit C to Cifelli Cert.) Eventually, the Gilgallons sought Certification in the New Jersey Supreme Court. However, Certification was denied. *See*, CFS Services, Inc. v. County of Hudson, 162 N.J. 485 (1999).

B.    The U.S. District Court Cases (2000 - 2004).

    1.    The First Federal Complaint: *Gilgallons v. Hudson County Board of Freeholders, et al.*, Civil Action No.:00-CV-591 (WGB).

Not satisfied with the outcome of the various decisions by the Administrative Hearing Officer, Law Division and Appellate Division of the Superior Court and the New Jersey Supreme Court(hereafter referred to as the "State Courts"), Ronald Gilgallon, Eileen Gilgallon, Shawn Gilgallon and Mary Hennig (collectively, "the Gilgallons") began to file lawsuits in the U.S. District Court for the District of New Jersey under their own names as taxpayers of Hudson County.

The first federal suit was filed on or about February 4, 2000, bearing civil action No. 00-CV-591 (WGB). The Complaint alleged that LMC intentionally violated the contract with Hudson County by (1) using Hudson County telephones without authorization; (2) over-billing Hudson County for services not provided; and (3) receiving payments from Hudson County for services rendered without a validly executed contract. The Gilgallons also alleged that the Settlement Agreement and/or Stipulation of Dismissal between LMC and Hudson County was fraudulent based on the different filing dates. (*See*, Complaint and docket sheet for 00-cv-591 (WGB) attached as Exhibit D to Cifelli Cert.)

Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The defendants asserted that the Gilgallons were precluded from raising claims against LMC because it was already resolved by way of the settlement agreement entered in December 1997. Additionally, the defendants argued that the Gilgallons did not have legal standing to bring a taxpayer suit on behalf of Hudson County. Judge Bassler granted the defendants' motion. Judge Bassler found that the Gilgallons' theory that the Stipulation of dismissal was fraudulent was meritless. Most importantly, Judge Bassler held that the Settlement Agreement between Hudson County and LMC reflected the intent of the parties to settle and release all claims alleged against LMC, including all claims that were brought and could have brought. Judge Bassler also cited the Appellate Division acceptance of the Settlement Agreement. (*See*, Hon. William G. Bassler's Opinion, dated January 31, 2001, attached as Exhibit E to Cifelli Cert.) The Gilgallons subsequently brought a motion for reconsideration, which was denied by Judge Bassler. Judge Bassler also awarded Rule 11 sanctions against the Gilgallons. (Exhibit D)

Thereafter, in March 2002, the Gilgallons filed motions to amend or alter a judgment pursuant to Fed. R. Civ. P. 60. Judge Bassler, under docket No. 00-591, upheld the dismissal and imposed sanctions against Plaintiffs. (Exhibit E) Specifically,

the plaintiffs argued that their own counsel and that of the Hudson County defendants, *i.e.*, Michael Dermody, conspired to deny them full litigation of their claims. Judge Bassler, in denying the plaintiffs' motion under Rule 60, observed that, "Plaintiffs are so paranoid that they even accuse their own counsel of being part of the purported alliance, allegedly having filed motion improperly and in a manner it was well aware the court would not consider." (*See*, Hon. William G. Bassler's Opinion dated March 19, 2002 annexed as Exhibit F to Cifelli Cert.)

The Gilgallons appealed Judge Bassler's decision. On July 16, 2004, the Third Circuit upheld Judge Bassler's decision in dismissing the plaintiffs' complaint, sanctioning the Gilgallons and denying their Rule 60 motion. (*See*, Third Circuit Opinion and Judgment entered on July 16, 2004, annexed as Exhibit G to Cifelli Certif.)

2. <u>The Second Federal Complaint</u>: ***Gilgallon v. Hudson County, Dermody, et al.***, **Civil Action No. 02 CV 0524 (KSH).**

In their Second Federal Complaint, the Gilgallons attempted to skirt the dismissal of their First Federal Complaint by simply claiming that counsel for the defendants in the first action, Michael Dermody, colluded with their own counsel to cover up the underlying corruption between Hudson County and LMC. (*See*,

Complaint (Civil Action No. 02-cv-524 (KSH)) attached as Exhibit H to Cifelli Cert.)

On April 8, 2002, the parties appeared before Magistrate Hedges pursuant to Rule 16 of the Federal Rules of Civil Procedure. At that time, there were several motions pending, including the defendants, John Lacey and Connell Foley's motion to dismiss pursuant to F.R.C.P. 12(b)6).

At the Rule 16 conference, Magistrate Hedges determined that the Gilgallons' Second Federal Complaint was substantially similar to the Rule 60 motion dismissed by Judge Bassler. Because there was an apparent overlap of allegations between the Rule 60 motion before Judge Bassler and the Second Federal Complaint final disposition of the First Federal Complaint before Judge Bassler would necessarily impact the allegations in the current matter under the doctrine of res judicata. (*See*, April 8, 2002, letter opinion by Hon. Ronald J. Hedges, U.S.M.J. attached as Exhibit I to Cifelli Cert.)

Magistrate Hedges then determined that the matter before the court could not proceed unless and until the matter before Judge Bassler were deemed final; *i.e.*, whether the Gilgallons were seeking redress from Judge Bassler's dismissal of their complaint through the appellate system or whether their time to appeal had run. Accordingly, Magistrate Hedges dismissed all pending motions (including the defendant, Connell-Foley's motion to

dismiss) and placed a stay on the matter pending the final outcome of the Gilgallons' Complaint before Judge Bassler. (*See*, July 23, 2002, letter opinion by Hon. Katharine S. Hayden, U.S.D.J. attached as Exhibit J to Cifelli Cert.)

Magistrate Hedges' order was then brought before Judge Hayden on the Gilgallons' motion for reversal. Judge Hayden upheld Magistrate Hedges' letter opinion of April 8, 2002. (Exhibit I) Judge Bassler's dismissal of the first Federal Complaint was eventually upheld by the Third Circuit Court of Appeals on July 16, 2004. (Exhibit G)

3. **<u>The Third Federal Court Complaint</u>: *Gilgallon v Hudson County, Michael Dermody, et al.*, Civil Action No. 02-cv-04319 (WGB)**

On September 5, 2002, the Gilgallons filed a third complaint in federal court under Civil Action No. 02-cv-04319 (WGB). (*See*, Complaint (Civil Action No. 02-cv-4319 (WGB)) attached as Exhibit K to Cifelli Cert.) Again, the Gilgallons filed suit against the defendant, Michael Dermody alleging civil rights violations. The Gilgallons' Complaint was dismissed on or about October 15, 2003. (*See*, docket sheet for 02-cv-4319 (WGB) attached as Exhibit K to the Cifelli Cert.)

4. **<u>The Fourth Federal Court Complaint</u>: *Gilgallon v. Hudson County, Michael Cifelli, et al.*, Civil Action No. 02-5948 (DMC)**

The Gilgallons then brought another action as taxpayers in New Jersey Federal District Court action, bearing civil action

no. 02-5948 (DMC) making essentially the same allegations as
those alleged in the State Court lawsuits. (*See*, docket sheet for
02-cv-5948 (DMC) attached as Exhibit L to Cifelli Cert.) On June
28, 2003, the suit was dismissed by The Honorable Dennis M.
Cavanaugh based on doctrines of the entire controversy doctrine,
res judicata, and collateral estoppel.  The Gilgallons moved for
reconsideration of the dismissal, but Judge Cavanaugh denied the
motion.

Specifically, Judge Cavanaugh found that the Gilgallons
claims of ultra vires payments to LMC and the validity of the
release between Hudson County and LMC were disposed by the
Appellate Division, Judge Bassler, Judge Hedges and Judge Hayden.
As such, Judge Cavanaugh again dismissed those claims and
sanctioned the Gilgallons under Rule 11.  (*See*, Hon. Dennis J.
Cavanaugh's Order and Opinion dated June 2, 2003 attached as
Exhibit M to Cifelli Cert.)

The Gilgallons appealed Judge Cavanaugh's Order under Docket
No. 02-5948 with the Third Circuit.  On June 9, 2004, the Third
Circuit upheld the entry of sanctions against the Gilgallons and
an Order barring Plaintiffs from future filings in Federal Court.
(*See*, Third Circuit's judgment and opinion attached as Exhibit N
to Cifelli Cert.)  The 3rd Circuit found the Gilgallons
repetitious filings as "abusive."  (Exhibit N)

5. The Fifth Federal Court Complaint: *Gilgallon v. Dermody, et al.*, Civil Action No. 03-cv-3366 (WGB).

On July 16, 2003, the Gilgallons filed a Fifth Federal Complaint, this time under Civil Action No. 03-cv-3366 (WGB). (*See*, Complaint (Civil Action No. 03-cv-3366 (WGB)) annexed as Exhibit O to Cifelli Certif.) Again, the Gilgallons alleged that prior counsel in 00-591, colluded to deprive the Gilgallons of their due process. (Exhibit O) On or about November 13, 2003, the Gilgallons withdrew their complaint. (Exhibit O) On January 12, 2004, Judge Bassler held that the Gilgallons' Fifth Federal Complaint was barred by Judge Cavanaugh's Order precluding the Gilgallons from filing further pleadings. (Exhibit O)

C. The Second State Court Action (2003 - present).

Perhaps sensing that the doors to the U.S. District Court would soon be closed for good, the Gilgallons initiated a second action in the Superior Court of New Jersey, Law Division, Hudson County Vicinage, on or about August 1, 2003. The Gilgallons' Superior Court Complaint was filed less than a month (approximately 15 days) after their fifth Federal Complaint under Civil Action No. 02-cv-3366 (WGB).

Plaintiffs initial Complaint was one of malpractice against their former counsel who represented them in the First Federal Complaint under 00-cv-0591 (WGB). The Gilgallons allege that their former counsel committed malpractice in the First Federal

Complaint (00-591)and that their former counsel colluded with defense counsel to withhold evidence from the court and to deny the Gilgallons their due process. (*See*, Complaint dated 8/1/03 attached as Exhibit P to Cifelli Cert.)

In their Second Amended Complaint, dated May 26, 2004, the Gilgallons allege that the defendant, Michael Dermody conspired with the Gilgallons' former counsel in the federal court matter to deprive the Gilgallons of the ability to litigate their claims[2]. (*See*, Second Amended Complaint, dated May 26, 2005, attached as Exhibit Q to Cifelli Cert.)

The defendant, Michael Dermody, under 28 U.S.C.A. § 2283, sought a temporary and/or permanent injunction from the Federal District Court barring the state court action from proceeding. Judge Bassler, by Order dated February 8, 2005 granted Michael Dermody's request for a permanent injunction. (*See*, Exhibit R attached to Cifelli Cert.) Judge Bassler, in his February 8, 2005 written opinion, found that an injunction was necessary to protect and effectuate the District Court's Judgment in the First Federal Court Action. (Exhibit R)

Judge Bassler enjoined the Gilgallons from prosecuting the action against Michael Dermody under docket number HUD-L-4228-03

---

[2] In an initial proposed Third Amended Complaint, the plaintiffs alleged that the County made ultra vires payments to LMC from 1994 - 1997 and that the defendants, Michael Cifelli, Mark Morchel and Francis DeLeonardis colluded with LMC to improperly settle Hudson County's claims against LMC. However, the plaintiffs withdrew their proposed Third-Amended Complaint while the application for an injunction was pending before Judge Bassler.

in the Superior Court of New Jersey. Further, the Gilgallons are not to file a future complaint against Mr. Dermody in any state or federal court for claims arising out of the Hudson County's awarding of securities services to LMC. (Exhibit R) The Gilgallons appealed Judge Bassler's injunction and the appeal is pending.

With an injunction barring proceedings against Mr. Dermody, the County of Hudson remained named as a defendant in the body of the Second Amended Complaint but with no specific act of wrongdoing against it. (Exhibit Q) Despite the absence of specific allegations against the County, the Superior Court ordered discovery to proceed.

On or about October 17 2005, the Gilgallons moved to file a Third Amended Complaint in the Superior Court of New Jersey. The allegations in the Third Amended Complaint mirror those made in the District Court Action 02-5948 (DMC). (*See*, proposed Third Amended Complaint attached as Exhibit S to Cifelli Cert.) Though the Gilgallons do not name Robert Janiszewski, Francis DeLeonardis, Mark Morchel, Michael Cifelli, The Board of Chosen Freeholders, Neil Carrol, Vincent Ascolese, Neptalia Cruz, William Braker, Nidia DaVila Colon, Albert Cifelli, Silverio Vega and Maurice Fitzgibbons (collectively hereinafter "the defendants") as defendants in their Third-Amended Complaint, the body of the pleading sets forth allegations against these individuals similar in nature to the allegation in Action 02-

5948. The Gilgallons, however, do name the Hudson County as a defendant in the Third-Amended Complaint as it was named in Civil Action No. 02-0524. And while Mr. Janiszewski is not named as a defendant in the Third Amended Complaint, he is continuously referenced in the Third Amended Complaint. (Exhibit S)

The allegations in common in both complaints are those alleging that Hudson County was involved in an embezzlement scheme with LMC; allegations that various departments in the County conspired to use the settlement agreement to cover up illegal activity of the county; Robert Janiszewski and Hudson County engaged in willful misrepresentations to the court in various proceedings to manipulate and/or obstruct justice. The issue of whether the Gilgallons' claims are barred by collateral estoppel and/or res judicata have not been raised or decided in the Superior Court of New Jersey.

As it was necessary for Judge Bassler to issue a permanent restraining order enjoining the Gilgallons from further filing against Mr. Dermody in any court, it is similarly necessary for this court to permanently enjoin the Gilgallons from further litigation against the above named defendants in order to protect its prior judgment and to stop the Gilgallons' attempt to re-litigate what has already been decided.

Defendants now request a temporary injunction pending final disposition of the issues, enjoining the Gilgallons and the Superior Court of New Jersey from further litigation against the above named defendants arising from the awarding of security guard contracts to Labor Management Concepts.

# LEGAL ARGUMENT

## POINT I

## THE ENJOINING OF A STATE COURT ACTION IS APPROPRIATE WHERE THE STATE COURT ACTION SEEKS TO RE-LITIGATE AN ISSUE WHICH WAS NECESSARILY DECIDED IN A PRIOR FEDERAL ACTION

### A. Federal Courts Have Authority to Enjoin Parties From Proceeding with State Court Actions Where The State Court Action Is Intended to Re-litigate An Issue Previously Determined By A Federal Court.

Although called the "Anti-Injunction Act", it has been recognized that Federal Courts have the authority to issue injunctions preventing State Court proceedings under certain circumstances. Specifically, under 28 U.S.C.A. § 2283:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

A judgment is to be "protected" from action which would frustrate it and is to be "effectuated" by an injunction when further action in a state court would mean re-litigation of cases and controversies which have been fully adjudicated. *See*, Commerce Oil Refining v. Miner, 303 F.2d 125, 127 (1st Cir. 1962). Where re-litigation in a state court would result in nullifying the judgment or decree of the United States court, a stay is appropriate. U.S. v. Ford Motor Co., 522 F.2d 962 (6th Cir. 1975); So. Central Bell Tel. Co. v. Constant Inc., 304 F. Supp. 732

(D.C. La. 1969), *aff'd,* 437 F.2d 1207; Berman v. Denver Tramway, 197 F.2d 946, 949 (10th Cir. 1952).

It is the federal rule that a court may and, in a proper case, must restrain persons from prosecuting actions in other proceedings. Baltimore and O.R. Co. v. Kepner, 314 U.S. 44, 62 S.Ct. 6, 154 L.Ed. 28 (1941); Bradford Electric Light Co. v. Clapper, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026 (1932); Moran v. Sturches, 145 U.S. 256, 14 S. Ct. 571, 38 L.Ed. 981 (1894); Philip v. Mackrev, 261 F.2d 945 (9th Cir. 1958). A court with authority to enforce an injunction is not justified in turning its suitors over to another tribunal to obtain justice. Bd. of Commissioners v. Aspinwall, 24 How. 376, 16 L.Ed. 735 (1860); *see also*, Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 985 F.2d 1067 (11th Cir. 1993) certiorari denied 114 S.Ct. 600, 510 U.S. 1011, 126 L.Ed.2d 565.(Anti-Injunction Act merely carves out exception to federal courts' broad injunctive powers, rather than authorizing an exclusion of class of injunctions.); U.S. Steel Corp. Plan for Employee Ins. Benefits v. Husisko, 885 F.2d 1170 (3rd Cir. 1989), *cert. den'd,* 110 S.Ct. 1121, 493 U.S. 1074, 107 L.Ed.2d 1028. (Anti-Injunction Act applies when court of United States grants injunction to stay proceedings of state court.); Amalgamated Clothing Workers of America v. Richman Bros. Co., 211 F.2d 449 (6th Cir. 1954), *cert. granted,* 75 S.Ct. 43, 348 U.S.

813, 99 L.Ed. 641, *aff'd,* 75 S.Ct. 452, 348 U.S. 511, 99 L.Ed. 600.(Section providing that a federal court may not grant an injunction to stay proceedings in the state court with certain exceptions, expresses the duty of "hands off" by federal courts in the use of injunctions to stay litigation in the state court.)

The granting of an injunction barring current state court proceedings is especially appropriate where the continuing re-litigation is vexatious. *See generally,* Scott v. Hunt Oil Co., 398 F.2d 810 (5th Cir. 1968) (District Court Judge, in order to relieve parties of harassing and vexing litigation, has power to enjoin party from filing suits in state courts so that court may protect or effectuate its judgments.) Sperry Rand Corp. v. Rothlein, 288 F.2d 245. (2nd Cir. 1961) (When federal court believes that another suit is being brought to undermine decision already made by court, injunction is proper.); Browning Debenture Holders Committee v. DASA Corp., 454 F.Supp. 88 (S.D.N.Y. 1978), *aff'd* 605 F.2d 35. (One of the traditional exceptions read into this section applies to cases in which state court proceedings sought to be enjoined are baseless and vexatious.); *and,* Chrysler Corp. v. E. L. Jones Dodae, Inc., 421 F.Supp. 969 (W.D.Pa.1976) (Exception embodied in phrase "to protect or effectuate its judgments", within provision of this section operates to save a successful litigant from being subjected to a vexatious court

litigation through collateral attacks on matters previously determined in the federal courts.)

Here, the claims being raised by the Gilgallons in their state court action are especially vexatious because the United States District Court, as well as the Third-Circuit court of appeals has observed and determined that the Gilgallons filing are abusive and frivolous. (Exhibits M and N) As a result, Judge Cavanaugh barred the Gilgallons from further filing which was upheld by the Third Circuit (Exhibits M and N) Indeed, Judge Cavanaugh intended this matter to be concluded when he observed that, "Plaintiffs have routinely dissipated the resources of this Court, starting with Judge Bassler, ***and ending, once and for all, with me***."(emphasis supplied) (Exhibit M)

Further, Judge Bassler recently enjoined the Gilgallons from filing further actions in state or federal court as to defendant Dermody (Exhibit R) The Third Circuit recently upheld Judge Bassler's injunction. (Exhibit R) To permit the Gilgallons to proceed in state court, after the Federal Court has sanctioned them for the same filing and further ordered them to stop filing the same allegations would be to allow the Gilgallons to make a mockery of the Federal District Court and Third Circuit's orders and judgments; specifically, those orders and judgments issued by Judge Bassler, Judge Hayden, Magistrate Hedges, Judge Cavanaugh and the Third Circuit. (Exhibits E through O) Accordingly, the

issuance of an injunction permanently barring the state court proceeding is necessary to protect the Federal Court's judgments.

The District Court has recognized a two-prong analysis to the issuance of an injunction under 28 U.S.C.A. § 2283:

> First, it must be determined whether the action falls within ambit of the Anti-Injunction Act. If it does, then an injunction cannot be issued regardless of the facts of the underlying case;
>
> Second, if the Anti-Injunction Act is not applicable, [the court] must then consider the merits of the injunction request itself.

Bosner v. State of N.J. , 605 F.Supp. 1227 (D.N.J. 1985); *citing,* Mitchum v. Foster, 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972); *and,* Vendo Co. v. Lektro-Vend, Corp., 433 U.S. 623, 645 n. 1, 97 S.Ct. 2881, 2895 n. 1, 53 L.Ed.2d 1009 (1977) (Stevens, J. dissenting) (providing a clear statement of relevant factors). The defendants have met both factors to warrant the issuance of an injunction.

First, the Gilgallons' Third Amended Superior Court Complaint does not fall within the protection of the Anti-Injunction Act. By attempting to re-litigate the same allegations against the defendants in the state court action which were dismissed time and again by the federal court, an injunction is necessary to protect the federal courts judgments and orders. It has long been recognized that injunctions issued to protect federal judgments fall outside the protections in the

Anti-Injunction Act. *See*, Hucmiev v. General Motors Corp., 999 F.2d 142 (6th Cir. 1993). (While this section generally precludes federal courts from interfering with state court proceedings, there is exception to protect or effectuate prior federal court judgments.) Southwest Airlines Co. v. Texas Intern. Airlines, Inc., 546 F.2d 84, (5th Cir. 1977)(Congress, by specifically excepting from the ban of this section all injunctions "to protect or effectuate * * * judgments" of the federal judiciary, has recognized that the states, as well as the federal government, have a responsibility to maintain the harmonious relations necessary to the functioning of our federal system.}; Commerce Oil Refining Corp. v. Miner, 303 F.2d 125 (1st Cir. 1962)(Effectuation, within this section, must relate to final judgments.); *and*, Northwest Airlines, Inc. v. Astraea Aviation Services, Inc., 930 F.Supp. 1317 (D.Minn.1996}, *aff'd*, 111 F.3d 1386 (Anti-Injunction Act only gives federal court power to enjoin state proceeding in order to protect or effectuate its judgments.). Clearly, the repetitious, abusive and vexatious filings by the Gilgallons fall outside the protection of the Anti-Injunction Act. Accordingly, the defendants have met the first prong of the two-step analysis in Bosner, *supra*.

Second, the merits of the request for the injunction warrant its issuance. Specifically, as it relates to the above named defendants, Judge Cavanaugh determined that the allegations of

fraud, collusion, conspiracy and corruption against these defendants were frivolous and should be dismissed. (Exhibit M) Judge Cavanaugh found that the Gilgallons' filings were so abusive that they warranted an order barring further filings without express, written permission by the court. (Exhibit M) The regurgitation of the same allegations in the current state court action is a direct and purposeful violation of Judge Cavanaugh's order and the judgment of the Third Circuit. (Exhibits M & N)

The tortured history of this litigation (fast approaching its 11th year) which warranted the prohibition against further filings in the U.S. District Court, as outlined in detail supra, likewise merits an injunction from further litigation in any court. Ballenger v. Mobil Oil Corp., 138 Fed.Appx.615, 622 (5th Cir. 2005)(5th Circuit has held that no independent demonstration of irreparable harm is necessary to win an injunction under re-litigation exception to Anti-Injunction Act. Rather, demonstrating that the state litigation concerns an issue actually decided by the federal courts is sufficient to demonstrate both the harm of continuing the state litigation and the lack of an adequate remedy at law.); *citing*, Vasquez v. Bridgestone/Firestone, Inc., 325 F.3d 665, 667 (5th Cir. 2003). Indeed, the same circumstances which warranted Judge Bassler's permanent injunction regarding Michael Dermody exist now. (Exhibit R)

A comparison of the Third Amended Complaint and the Complaint filed under 02cv-5948 (DMC), discussed in more detail, *infra*, clearly demonstrates that the Gilgallons are making the same allegations against the defendants they made in the prior federal lawsuits. In essence, the Gilgallons are simply ignoring the Federal Court's orders and judgments which dismissed the same allegations against the defendants. The repetitive nature of the Gilgallons' allegations, combined with the procedural quagmire created by the Gilgallons, merits a permanent injunction applicable to both state and federal courts in this matter. Accordingly, the second prong of the two-step analysis in Bosner has been met.

Because both prongs of the two-step analysis in Bosner have been met, the issuance of an injunction against the state court action is appropriate and should be granted.

**B. Where An Issue Is Necessarily Determined By A Federal Court, An Injunction Is Appropriate To Avoid Re-litigation.**

In Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 108 S. Ct. 1684 (1988), the United States Supreme Court held that an injunction of a state court action is appropriate where the state court would be re-litigating an issue which was necessarily determined in a prior federal proceeding. In Chick Kam Choo, the petitioner brought a wrongful death action in the District Court for the Southern District of Texas arising out of a death that

occurred in Singapore. The District Court dismissed the matter-under the doctrine of forum non conveniens, provided that the defendants submit to the jurisdiction of the Singapore courts. Id. at 1688. In addition, the District Court held that Singapore law would apply to the controversy. Id.

Instead of bringing the action in Singapore, petitioner brought an action in the State Courts of Texas. Id. The state court complaint contained all of the same allegations as were in the complaint in the prior federal action. Id. Petitioner alleged that the law of the State of Texas would apply. Id. at 1691.

Defendants moved before the District Court for an injunction of the state court action based upon the District Court's ruling dismissing the matter for forum non conveniens and sought an injunction of the state law claim based upon the court's determination that Singapore law applied. Id. The District Court issued the injunction. Id.

The United States Supreme Court upheld the permanent injunction in part and reversed in part. Id. at 1692. With regard to the issue of whether Texas was an appropriate forum for the action, the Supreme Court reversed. Id. The Court noted that:

> [T]he only issue decided by the District Court was that petitioner's claims should be dismissed under the federal forum non conveniens doctrine. Federal forum non conveniens principles simply cannot determine whether Texas courts, which operate under a broad "open courts" mandate, would consider themselves an appropriate forum for petitioner's lawsuit. . . . Moreover, the Court of Appeals expressly recognized

> that the Texas Courts would apply a significantly different forum non conveniens analysis. Thus, whether the Texas state courts are an appropriate forum for petitioner's Singapore law claims has not yet been litigated, and an injunction to foreclose consideration of that issue is not within the re-litigation exception. (Citations omitted.) [Id. at 1690.]

However, with regard to the question of whether Texas law or Singapore law applied to petitioner's claim, the Court upheld the injunction. Id. 1691. Petitioner again argued that this issue was not "actually litigated" during the initial federal action. Id. The Court, however held that:

> Because in its 1980 decision the District Court decided that Singapore law must control petitioner's lawsuit, a decision that necessarily precludes the application of Texas law, an injunction preventing re-litigation of that issue is within the scope of the re-litigation exception of the Anti-Injunction Act. [Id. at 1691-1692.]

Thus, the rule of Chick Kam Choo is that where an order or judgment of a federal court necessarily determines an issue, the re-litigation exception applies. This is the case even if that issue was neither argued before the Court nor expressly addressed in the Federal Court's ruling. A permanent injunction is necessary in this matter to avoid the re-litigation of the allegations against the Hudson County defendants.

Here, through the Third Amended Complaint in HUD-L-4228-03, the Gilgallons are simply re-litigating the allegations brought to this court in 02-cv-5948 (DMC).

The Gilgallons' allegations in both the Third Amended Complaint and the Complaint in 02-cv-5948 can be categorized into two categories.

1. Alleged corruption and collusion (*e.g.*, embezzlement, fraud) of County officials leading to ultra vires payments to LMC for security guard services;

2. Alleged conspiracy by County officials to settle Hudson County's claims against LMC through illegal resolutions and settlement agreements;

3. that the settlement between Hudson County and LMC is invalid because of improperly executed documents under state law and/or the County administrative code; and,

4. that the defendants committed a fraud upon this Court in 02-cv-5948 (DMC) by not admitting to the aforementioned fraud, corruption, collusion, and embezzlement.

A side-by-side comparison of the Third Amended Complaint and the Complaint in 02-cv-5948 (DMC) highlights the similarity in allegations and the Gilgallons' attempt to re-litigate the same issues.

| **Third Amended Complaint**<br>**Superior Court HUD-L-4228-03**<br>**(Exhibit __)** | **U.S. District Court Complaint**<br>**Civil Action No. 02-5948(DMC)**<br>**(Exhibit ____)** |
|---|---|
| **Count V, ¶ 37**<br>Issues of an embezzlement scheme involving the County of Hudson and LMC as well as the transfer of millions of dollars in ultra vires payments by the County to LMC. | **Count I, ¶ 51**<br>Prior to 1994 contract to LMC, RJ developed a plan to embezzle hundred of thousands of dollars through a secret arrangement that included illegal perks and a lucrative billing scam. |

| | |
|---|---|
| Count V, ¶ 47<br>Freeholder O'Dea stated that he believed that the resolution only related to LMC's outstanding telephone charges. | Count II, ¶ 17<br>Freeholder O'Dea understood that the resolution only authorized a settlement of LMC's telephone charges |
| Count V, ¶ 69<br>Various departments in a conspiracy used the settlement agreement to cover up the illegal activity of LMC and the County | Count II, ¶ 60-63<br>Freeholders' actions were to cover up and continue the pattern of fraud and corruption |
| Count V, ¶ 78<br>The County and RJ had info that demonstrated how LMC embezzled over $300K between 5/94 and 10/96 | Count I, ¶ 57<br>Plaintiffs have acquired purchase orders, invoices and backups that indicate the amounts embezzled exceed $300K. |
| Count V, ¶ 82-83<br>RJ and the County of Hudson engaged in conspiracy, fraud and willful misrepresentation during the course of civil action 02-5948. | Count VI, ¶ 31<br>Defendants manipulated the judicial system to obstruct justice |
| Count VI, ¶ 6<br>12/22/97 RJ presented a resolution to the Freeholders requesting a settlement of a cross-claim for unauthorized phone costs be approved in the amount of $30K | Count II, ¶ 10-13<br>Freeholders understood the embezzlement operation involved ultra vires payments, padded billing and telephone usage. However, the 12/22/97 resolution authorized a $30K settlement of the phone bill issue. |
| Count VI, ¶ 10<br>resolution never executed by the county executive. | Count II, ¶ 3<br>Hudson County violated the Hudson County Administrative Code |
| Count VI, ¶ 26<br>RJ and County intentionally made willful misrepresentations to the Court | Count VI, ¶ 31<br>Defendants manipulated the judicial system to obstruct justice |

The allegations of ultra vires payments to LMC from Hudson County and an illegal settlement between LMC and Hudson County have been continually raised since 1996 and in the context of several state and federal court litigations. Each and every court to consider those allegations has rejected them on the fact of the allegations. Some courts have entered multiple sanctions against the Gilgallons and others have ordered them to stop filing further pleadings. Regardless, the record is clear that these issues have been raised and disposed. As such, the

Gilgallons' Third Amended Complaint represents an attempt to re-litigate the factual and legal allegations in 02-cv-5948 (DMC) Therefore, the issuance of a permanent injunction against the Gilgallons' state court Complaint is necessary to avoid re-litigation of prior allegations.

Therefore, it is respectfully requested that this Court enter an order for temporary and/or permanent injunction barring the Gilgallons from further litigation in any United States District Court and/or the Superior Court of New Jersey. Finally, given the Gilgallons' propensity to re-file complaints and pick and choose individual County employees as vehicle defendants to reiterate the same issues, it is respectfully requested that the court issue an injunction applicable to all named defendants in this matter and to include any other County employee. Only upon the issuance of such an order would this matter come to an end, "once and for all." (Exhibit M).

## CONCLUSION

The circuitous history of the present litigation is reminiscent of an observation made by author Charles Dickens a century and one-half ago, putting into literature the fallout from abusive and opprobrious litigation. As Dickens observed:

> Jarndyce and [vs.] Jarndyce drones on. This scarecrow of a suit has, in course of time, become so complicated that no man alive knows what it means. The parties to it understand it least, but it has been observed that no two Chancery lawyers can talk about it for five minutes without coming to a total disagreement as to all the premises. Innumerable children have been born

> into the cause; innumerable young people have married into it; innumerable old people have died out of it. Scores of persons have deliriously found themselves made parties in Jarndyce and [vs.] Jarndyce without knowing how or why; whole families have inherited legendary hatreds with the suit. The little plaintiff or defendant who was promised a new rocking-horse when Jarndyce and [vs.] Jarndyce should be settled has grown up, possessed himself of a real horse, and trotted away into the other world. Fair wards of court have faded into mothers and grandmothers; a long procession of Chancellors has come in and gone out; the legion of bills in the suit have been transformed into mere bills of mortality; there are not three Jarndyces left upon the earth perhaps since old Tom Jarndyce in despair blew his brains out at a coffee-house in Chancery Lane; but Jarndyce and [vs.] Jarndyce still drags its dreary length before the court, perennially hopeless.

Bleak House, Chapter One, Charlès Dickens (1852).

For the foregoing reasons, it is respectfully requested that the court grant the defendants' order to show cause. Accordingly, the defendants seek a temporary injunction pursuant to Fed.R.Civ.P. 65 barring any further action in the Superior Court of New Jersey under docket number HUD-L-4228-03, pending a return date set by the court thereafter by which the Gilgallons must show cause why a permanent injunction should not be issued.

Respectfully submitted,
SCARINCI & HOLLENBECK, L.L.C.

By: ______________________
MICHAEL A. CIFELLI

Dated: November 3, 2005

SCARINCI & HOLLENBECK, LLC
ATTORNEYS AT LAW
1100 VALLEY BROOK ROAD
P.O. BOX 790
LYNDHURST, NEW JERSEY 07071
Telephone: (201) 896-4100
Attorneys for Defendant County of Hudson
Our File No. 130.2890

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EILEEN GILGALLON, RONALD GILGALLON and SHAWN GILGALLON,<br><br>Plaintiffs,<br><br>v.<br><br>THE COUNTY OF HUDSON, ROBERT JANIZEWSKI, FRANCIS DELEONARDIS, MARK MORCHEL, MICHAEL CIFELLI, THE BOARD OF CHOSEN FREEHOLDERS, NEIL CARROL, VINCENT ASCOLESE, NAPTALIA CRUZ, WILLIAM BRAKER, NIDIA DAVILA-COLON, WILLIAM O'DEA, ALBERT CIFELLI, SILVERIO VEGA, MAURICE FITZGIBBONS, CONNELL, FOLEY, LLP, JOHN PL. LACEY, LABOR MANAGEMENT CONCEPTS, INC., JOHN MUNRO, STATE OF NEW JERSEY, JOSEPH TRAPP, and ABC CORPORATIONS 1-10 (a fictitious corporation) and JOHN and MARY DOES 1-10 (fictitious persons),<br><br>Defendants. | Hon. Dennis M. Cavanaugh<br><br>Civil Action No. 02-5948<br><br>**CERTIFICATION OF MICHAEL A. CIFELLI** |

MICHAEL A. CIFELLI, hereby certifies that:

1. I am an attorney at law of the State of New Jersey and Counsel for the law firm of Scarinci & Hollenbeck, L.L.C. As

such, I have been entrusted with the handling of the defense of the within matter on behalf of Defendant County of Hudson.

2. I make this Certification in support of Defendant's Order to Show Cause.

3. Attached hereto as Exhibit A is Appellate Division Decision dated May 20, 1999.

4. Attached hereto as Exhibit B is Settlement Agreement and Release dated December 26, 1997.

5. Attached hereto as Exhibit C is Stipulation of Dismissal and Certified Docket dated December 26, 1997.

6. Attached hereto as Exhibit D is the Complaint and docket sheet for Civil Action No. 00-cv-591 (WGB).

7. Attached hereto as Exhibit E is Hon. William G. Bassler's Opinion, dated January 31, 2001.

8. Attached hereto as Exhibit F is Hon. William G. Bassler's Opinion, dated March 19, 2002.

9. Attached hereto as Exhibit G is Third Circuit Opinion and Judgment entered on July 16, 2004.

10. Attached hereto as Exhibit H is the Complaint (Civil Action No. 02-cv-524 (KSH)).

11. Attached hereto as Exhibit I is Letter Opinion by Hon. Ronald J. Hedges, U.S.M.J., dated April 8, 2002.

12. Attached hereto as Exhibit J is Letter Opinion by Hon. Katharine S. Hayden, U.S.D.J., dated July 23, 2002.

13. Attached hereto as Exhibit K is the docket sheet for Civil Action No. 02-cv-4319 (WGB).

14. Attached hereto as Exhibit L is the Complaint and docket sheet for Civil Action No. 02-cv-5948 (DMC).

15. Attached hereto as Exhibit M is Hon. Dennis M. Cavanaugh's Order and Opinion dated June 2, 2003.

16. Attached hereto as Exhibit N is Third Circuit's Judgment and Opinion dated June 9, 2004.

17. Attached hereto as Exhibit O is the docket sheet for Civil Action No. 03-cv-3366 (WGB).

18. Attached hereto as Exhibit P is Complaint dated August 1, 2003.

19. Attached hereto as Exhibit Q is Second Amended Complaint dated May 26, 2004.

20. Attached hereto as Exhibit R is Hon. William G. Bassler's Opinion & Order granting permanent injunction dated February 8, 2005, and Third Circuit Order dated November 3, 2005.

21. Attached hereto as Exhibit S is Third Amended Complaint in HUD-L-4228-03.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment

MICHAEL A. CIFELLI

Dated: November 4, 2005